UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MARK JASON COOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15CV00182NCC |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of the Commissioner of Social Security's final decision denying Mark Jason Cook's ("Plaintiff") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.,* and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a Brief in Support of his Complaint. (Doc. 18). Defendant has filed a Brief in Support of the Answer. (Doc. 25). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

### I. PROCEDURAL HISTORY

On June 20, 2012, Plaintiff filed an application for DIB and for SSI. (Tr. 156, 162). The Social Security Administration ("SSA") initially denied Plaintiff's claim on October 20, 2012.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(Tr. 96-100). Plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ") on December 31, 2012. (Tr. 101-103). Following a hearing on March 20, 2014 (Tr. 26), the ALJ issued a written decision on April 29, 2014, upholding the denial of benefits. (Tr. 9-25). Plaintiff requested a review of the ALJ's decision by the Appeals Council. (Tr. 7-8). On August 20, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Thus, the decision of the ALJ stands as the final decision of the Commissioner of Social Security.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2016, and had not engaged in substantial gainful activity since April 6, 2012, the alleged onset date of disability. (Tr. 14). The ALJ found Plaintiff has the following severe impairments: schizoaffective disorder, panic disorder, chronic obstructive pulmonary disease ("COPD"), and mild degenerative disc disease, but that no impairment or combination of those impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-15).

After consideration of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations. He may occasionally lift ten pounds frequently and 20 pounds occasionally, sit for up to six hours, and stand or walk for approximately six hours in an eight hour day with normal breaks. (Tr. 16). Plaintiff can occasionally climb ramps or stairs, but must never climb ladders, ropes, or scaffolds. (*Id.*). Plaintiff must also avoid exposure to pulmonary irritants such as fumes, odors, dust, and gases as well as workplace hazards such as unprotected moving mechanical parts and unprotected heights. (*Id.*). Plaintiff is able to understand, carry out, and remember simple, routine, and repetitive tasks involving only simple, work-related decisions with few, if any, work

2

place changes.  (*Id.*).  Plaintiff is to have no interaction with the public, but can be around coworkers with only brief, incidental interaction and no tandem tasks.  (*Id.*).  Plaintiff's work must be isolated, defined as having a supervisor check on work only occasionally.  (*Id.*).

The ALJ found Plaintiff unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that he can perform, including a folding machine operator, laundry sorter, and production assembler.  (Tr. 20-21).  Thus, the ALJ concluded that a finding of "not disabled" was appropriate.  (Tr. 21).  Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC, and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, always remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a

preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

5

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff argues that the ALJ committed reversible error in failing to give the proper weight to the opinions of Plaintiff's treating physician, [2] Dr. Reeta Rohatgi ("Dr. Rohatgi"). For the following reasons, the Court finds that Plaintiff's argument is without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

Dr. Rohatgi completed two nearly identical Medical Statements dated February 20, 2013. (Tr. 355-62). On the first form,[3] Dr. Rohatgi found that Plaintiff exhibits signs and symptoms of: pervasive loss of interest in almost all activities; sleep disturbance; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; hallucinations, delusions, or paranoid thinking; generalized persistent anxiety; apprehensive expectation; persistent irrational fear of a specific object, activity, or situation; recurrent severe panic attacks; and recurrent and intrusive recollections of a traumatic experience. (Tr. 355). Dr. Rohatgi found Plaintiff has mild restriction of activities of daily living, and extreme difficulty in maintaining social functioning. (*Id.*). Dr. Rohatgi also determined that Plaintiff is presently suffering from: deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; repeated episodes of deterioration or decompensation in work or work-like settings which cause the patient to withdraw; and complete inability to function independently outside the area of the patient's home due to panic attacks. (Tr. 355-56).

---

[2] The Parties do not dispute that Dr. Rohatgi is one of Plaintiff's treating physicians. (*See* Doc. 18 at 19 and Doc. 25 at 4).

[3] The first form was titled as a "Medical Statement Concerning Depression with Anxiety, OCD, PTSD, or Panic Disorder for Social Security Disability Claim."

As for work limitations related to Plaintiff's psychiatric state, Dr. Rohatgi opined that Plaintiff is extremely impaired in his ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with and proximity with others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in work setting. (Tr. 356-57). Plaintiff is markedly impaired in his ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; and set realistic goals or make plans independently of others. (*Id.*). Plaintiff is moderately impaired in his ability to: remember locations and work-like procedures; understand and remember short and simple instructions; carry out very short ad simple instructions; make simple work-related decisions; and ask simple question or request assistance. (*Id.*). Plaintiff is not significantly impaired in his ability to: maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation. (*Id.*)

On the second form,[4] Dr. Rohatgi noted that she had been treating Plaintiff since

---

[4] The second form is titled a "Medical Statement Concerning Bipolar Disorder and Related Conditions for Social Security Disability Claim."

December 20, 2013.[5] (Tr. 359). Dr. Rohatgi diagnosed Plaintiff with bipolar affective disorder (mixed type), and assessed Plaintiff with a global assessment of functioning ("GAF")[6] of 55. (*Id.*). Dr. Rohatgi found Plaintiff has no restrictions of activities of daily living, and extreme difficulty in maintaining social functioning. (Tr. 360). Dr. Rohatgi determined that Plaintiff is presently suffering from: deficiencies in concentration, persistence, or pace in frequent failure to complete tasks in a timely manner; and repeated episodes of deterioration or decomposition in work or work-like settings which cause the patient to withdraw. (*Id.*). A majority of the work limitations described on the first form were reiterated on the second form. (Tr. 360-62). The differences between the two forms regarding Plaintiff's limitations are as follows: to carry out very short and simple instructions was changed from moderate to no significant impairment; to maintain attention and concentration for extended periods was changed from marked to extreme impairment; to sustain an ordinary routine without special supervision was changed from extreme to marked impairment; to make simple work-related decisions was changed from moderate to no significant impairment; to interact appropriately with the general public was changed from marked to extreme impairment; to accept instructions and respond appropriately to criticism from supervisors was changed from extreme to marked impairment; and to respond appropriately to changes in work setting was changed from extreme to marked impairment.

---

[5] As noted in Defendant's brief, Defendant assumes that Dr. Rohatgi mistakenly wrote 2013 instead of 2012. (Doc. 25 at 5). The Court will make the same assumption.

[6] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32.

(*Id.*).

The Court finds that the ALJ afforded proper weight to the opinions of Dr. Rohatgi. In addressing Dr. Rohatgi's opinion concerning Plaintiff's impairments and ability to engage in work related activities, the ALJ granted her opinion "no weight." (Tr. 19). Specifically, the ALJ found that the "record has no support from treatment notes . . . [and] the report itself is internally inconsistent as the psychiatrist notes a GAF score of 55, suggesting only moderate limitation overall." (*Id.*). While the ALJ acknowledges that this may be a treating source, "the lack of objective medical support does not warrant a finding that the opinion should be granted controlling weight." (*Id.*).

Generally, a treating physician's medical opinion regarding a claimant's impairment is granted controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016). *See also House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.") (internal quotations omitted). However, while a "treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Reece*, 834 F.3d at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). The ALJ may discount a treating physician's opinion "if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *See Hamilton*, 518 F.3d 607, 610 (8th Cir. 2008) (quoting *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001)). Whether the ALJ affords the opinion of a treating physician great or little weight, the ALJ must provide good

9

reasons for doing so. *See Hamilton*, 518 F.3d at 610.

First, here, the ALJ found that Dr. Rohatgi's opinion was unsupported by the record. (Tr. 19). Specifically, the ALJ noted the record contained no treatment notes from Dr. Rohatgi, and the two Medical Statement forms contained no explanations regarding Plaintiff's symptoms or any specific medical findings. (Tr. 19, 355-62). In fact, the forms consisted of mere checkmarks describing symptoms and functional limitations, but these findings remain unsupported by the record. (*Id.*). As is the case here, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." *Swarnes v. Astrue*, Civ. No. 08–5025–KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration).

Plaintiff attributes the lack of treatment notes by Dr. Rohatgi in the record to the ALJ. In making this assertion, the Plaintiff contends that the ALJ failed to develop the record related to Dr. Rohatgi and obtain the treatment notes which would otherwise indicate the length and type of treatment Dr. Rohatgi provided to Plaintiff. (Doc. 18 at 23). Plaintiff argues, pursuant to Social Security Ruling ("SSR") 96-5p,[7] that the ALJ is required to recontact a treating source.

However, on March 26, 2012, the Commissioner revised the relevant regulations, 20

---

[7] The relevant language of SSR 96-5p cited by Plaintiff is as follows:

Requirements for Recontacting Treating Sources

Because treating source's evidence (including opinion evidence) is important, if the evidence does not support a treating source opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case records, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

10

C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1), regarding the requirement to recontact treating physicians. *See* 77 Fed. Reg. 10651-01, 2011 WL 7404303 (February 23, 2012). In the notice of proposed rulemaking, the requirement to recontact a medical source was modified to provide adjudicators more flexibility in determining how to best obtain information to resolve an inconsistency or insufficiency in the evidence presented. *See* 76 Fed. Reg. 20283, 2011 WL 1359404 (April 12, 2011). Specifically, the preamble states "[b]y giving adjudicators more flexibility in determining how best to obtain this information, we will be able to make a determination or decision on disability claims more quickly and efficiently . . . ." *See* 77 Fed. Reg. 10651-01, 2011 WL 7404303 (February 23, 2012).

Instead, ALJs are now directed to "weigh the relevant evidence and decide if we can determine whether you are disabled based on the evidence we have . . . if any of the evidence in a case record, including any medical opinion(s), is inconsistent." 20 C.F.R. §§ 404.1520b, 416.920b. *See also* 76 Fed. Reg. 20283, 2011 WL 1359404 (April 12, 2011). When there is insufficient evidence to make such a determination concerning disability, the ALJ may recontact a medical source, request additional records, obtain a consultative examination, or ask the claimant for more information. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c). The regulation does not mandate an adjudicator recontact a medical source. *Id*. ("The action(s) we take will depend on the nature of the inconsistency or insufficiency . . . . We might not take all of the actions listed. . . .").

Therefore, the Court finds the ALJ was not required to recontact Dr. Rohatgi as there is other evidence in the record that indicated Plaintiff is not as limited as Dr. Rohatgi indicated. Specifically, the ALJ relied on the opinions of Paul W. Rexroat, Ph.D, ("Dr. Rexroat") and Joan Singer, Ph.D. ("Dr. Singer"). (Tr. 18). Dr. Rexroat opined that Plaintiff is able to understand

11

and remember simple instructions as well as sustain concentration and persistence with simple tasks. (Tr. 349-50). Plaintiff has moderate limitations in his ability to interact socially, and mild limitations in his ability to adapt to his environment and with activities of daily living. (*Id.*). Dr. Singer concluded that Plaintiff is moderately limited in his ability to perform detailed work, working in coordination with others without being distracted, responding appropriately to coworkers and supervisors, and getting along with others without distracting them or exhibiting behavioral extremes. (Tr. 81-91). She concluded that, under the totality of the evidence, Plaintiff retains the capability to perform at least simple repetitive tasks on a sustained basis in a low stress environment away from the public. (Tr. 89). Based on the opinions of Dr. Rexroat and Dr. Singer, and other evidence in the record, the ALJ was able to reach a decision without the need to recontact Dr. Rohatgi. *See Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."). *See also Kamann v. Colvin*, 721 F3d 945, 951 (8th Cir. 2013) (State agency psychologist's opinion supported ALJ's finding that claimant could work despite his mental impairments).

Additionally, the Court finds Plaintiff's argument that the ALJ erred in affording "significant weight" to Dr. Rexroat's and Dr. Singer's opinions because they were offered well before the ALJ's decision meritless. (Doc. 18 at 28-29). All State agency medical consultant opinions may be considered and afforded weight notwithstanding being obtained prior to the ALJ's decision. *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (finding ALJ did not err in considering State agency psychologist's opinion along with the medical evidence as a whole). *See also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("[B]ecause state

agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.").

It is also critical to note that the Plaintiff has the burden to provide evidence establishing disability, including treatment notes. *See Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) ("Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment."); *Young,* 221 F.3d at 1069 n.5 ("The ultimate burden of persuasion to prove disability, however, always remains with the claimant."). Had Plaintiff been unrepresented at the administrative level, a heightened duty would have been placed on the ALJ to assist in developing the record, but that is not the case here. (Tr. 7, 28, 94-95, 267-70). *See Miller v. Sullivan*, 953 F.2d 417, 422 (8th Cir. 1992).

The Court finds that Plaintiff had ample opportunities to provide all the relevant evidence for the record, including the treatment notes from Dr. Rohatgi. At the hearing, during the examination of Plaintiff's caseworker, Allison Poletti ("Ms. Poletti"), the ALJ inquired as to whether Plaintiff's representative had submitted all the records, including any narratives, treatment notes, or case reports, from the Community Counseling Center, Dr. Rohatgi's place of practice. (Tr. 32). Plaintiff's representative responded in the affirmative, explaining that he had submitted all the records he could obtain. (Tr. 32-33). The ALJ also left the record open for three additional weeks after the close of the hearing on March 10, 2014, to afford Plaintiff the opportunity to submit any additional evidence for consideration. (Tr. 68). Plaintiff and his representative made the choice not to do so. After Plaintiff requested a review of the ALJ's decision, Plaintiff had the opportunity to submit any additional evidence, including Dr. Rohatgi's treatment notes, for consideration by the Appeals Council. *See* 20 C.F.R. §§ 404.968(a) and

13

416.1468(a). Plaintiff and his representative, again, chose not to submit any additional evidence.

Finally, Plaintiff had one last opportunity to submit the treatment notes by attaching them to his brief to the Court. Pursuant to 42 U.S.C. § 405(g), upon a showing of new and material evidence, the Court could have remanded the matter to the Commissioner to consider such evidence. Plaintiff made the choice not to do so. However, even assuming Plaintiff had submitted the treatment notes with his brief, Plaintiff has failed to show "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Thus, not only was the ALJ not required to recontact Dr. Rohatgi to obtain her treatment notes, but Plaintiff failed to avail himself of the numerous opportunities before him to present them himself.[8] The Court therefore finds no basis for remand to recontact and obtain Dr. Rohatgi's treatment notes.

Second, the ALJ also observed that Dr. Rohatgi's Medical Statement forms were internally inconsistent. (Tr. 19). On the two forms, Dr. Rohatgi indicated that Plaintiff has marked or extreme limitations in a majority of the functional areas described in the checklist. (Tr. 356-57, 360-62). However, she also assigned Plaintiff a GAF score of 55, which suggests only moderate limitation overall. (Tr. 359). Based on the inconsistency between the GAF score assigned to Plaintiff and the marked or extreme limitations Dr. Rohatgi described in the Medical Statement forms, the ALJ properly afforded her opinion lesser weight. *See Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) ("[W]e have considered GAF scores in reviewing an ALJ's determination that a treating source's opinion was inconsistent with the treatment record."). *See*

---

[8] The Court also finds it pertinent to note that not only did Plaintiff's representative fail to incorporate Dr. Rohatgi's treatments notes as evidence, but that Plaintiff's representative did not submit approximately 150 pages of evidence to the ALJ until the Friday prior to the hearing held the following Monday. (Tr. 29).

14

*also Goff*, 421 F.3d at 791 (finding that the treating physician's opinion about claimant's GAF score of 58 was inconsistent with his opinion that claimant suffered extreme limitations).

Further, the ALJ found that Plaintiff's daily activities and the limitations described by Dr. Rohatgi were inconsistent with the medical evidence in the record. (Tr. 20). As this Circuit has held, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Specifically, the ALJ notes Plaintiff's ability to handle his own personal chores and personal care, and attend to simple tasks. (Tr. 20, 350). While the Plaintiff testified that he rarely leaves his room, the ALJ found this allegation unfounded as the Plaintiff has also testified to going fishing, attending car shows, dating women, and other various activities outside the home. (Tr. 20, 44-45, 58). As explained by the ALJ, "[s]uch overall evidence fails to establish that the claimant has any of the disabling mental or physical limitations he alleges." (Tr. 20).

In support of his argument, the Plaintiff contends that the ALJ ignored the substantial and overwhelming portions of the record that are consistent with and offer support for Dr. Rohatgi's opinions. (Doc. 18 at 24; Tr. 29-32, 271-83, 331-38, 363-77, 400-02) Plaintiff first relies on three separate mental health hospitalizations. (Doc. 18 at 24-26). In April 2009, Plaintiff was hospitalized on a 96 hour court order, three years prior to the alleged onset date. (Tr. 271). While Plaintiff cites a GAF score of 35, reflecting serious limitations, this score is inconsistent with the GAF score of 55 Dr. Rohatgi assigned in February 2013, indicating only moderate symptoms. (Tr. 281, 359). The other two hospitalizations upon which Plaintiff relies occurred four years later in June and July of 2013. (Doc. 18 at 25-26). During his care, Plaintiff was assessed with GAF scores of 35, 40, and 45. (Tr. 365, 401-02). However, the record shows these visits were related to depression due to Plaintiff's breakup with his girlfriend and the recent

15

death of his sister. (Tr. 368, 410). Situational depression is not a proper basis to award disability benefits. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations); *Shipley v. Astrue*, 2010 WL 1687077, at *12 (E.D. Mo. April 26, 2010) (situational depression is not disabling).

Plaintiff next cites to the August 2012 examination performed by Price Gholson, Psy.D., who opined that Plaintiff was disabled/incapacitated for the purposes of Medicaid eligibility. (Tr. 332). As the ALJ noted, such a conclusory statement of disability must be afforded little weight as this is an issue reserved for the Commissioner. (Tr. 18). *See also* 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3). As further noted by the ALJ, Dr. Gholson's findings of auditory hallucinations and paranoid delusions were inconsistent with Dr. Rohatgi's assessment of Plaintiff, just a month later, which revealed no paranoia, hallucinations, or delusions. (Tr. 18, 337, 349).

Finally, Plaintiff relies on the testimony of his caseworker, Ms. Poletti. (Doc. 18 at 27). However, not only does the record not contain any notes from Ms. Poletti's sessions with Plaintiff, but she only has a bachelor's degree in criminal justice with a minor in psychology. (Tr. 30). Her lay opinion does not outweigh the well-supported opinions of Dr. Rexroat and Dr. Singer. *See* 20 C.F.R. §§ 404.1527(c)(5) and 416.927(c)(5).

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

Dated this 27th day of March, 2017.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE